Good afternoon, Your Honor, and may it please the Court. Keith Donahue for Appellant Malik Nasir. We've raised – I would ask to reserve four minutes of my time for rebuttal, please. We've raised some important challenges to the conviction in this case, but if it pleases the Court, I would propose to turn first to the sentencing challenge at issue, and this that application note, which is in the nature of commentary adopted by the Sentencing Commission without need of public comment or congressional review, has been held by two circuits in the last 18 months to be without legal effect because it's contrary to the text of the guideline itself. But what do we do with Hightower? Well, Hightower is certainly something you have to engage with. I think it's been abrogated – It's a presidential opinion of this Court. Right. So our position is that Hightower was abrogated by the Supreme Court's decision this past June in Kaiser v. Wilkie. But Hightower didn't really relate to deference. We relied on the Stinson case, which hasn't been abrogated by Kaiser. I think they're apples and oranges, don't you think? No, I think it's very – I think that, respectfully, Hightower did invoke Stinson to say that we're bound to defer to the Sentencing Commission's reasonable interpretation. And what Hightower – It didn't say defer. Hold on just a moment. I'm not sure it used the word defer. You're right. Yeah. Don't we have the obligation – even before I ask that question, am I correct as a factual matter that right now there is in front of the Sentencing Commission a proposed amendment to make clear in the guideline itself the issue which is about inchoate crimes, which is in the commentary? Is that correct? A proposed amendment, yes. Yeah. Would that – would there be an ex post facto problem if we were to rely on that change? Should we be holding this case? I mean, does that – does the fact that that's – it appears to be on its way to showing up in the guideline proper have any bearing on this at all? I don't believe so, Your Honor. There might be an ex post facto issue. There's no imminence to that becoming a change because the commission's without a quorum presently. So we have no reason – The comment period is over, right? Well, the commission – I'm not sure. The commission can't go forward in seeking to promulgate that amendment because it doesn't have a quorum of members right now. So it's not before Congress. It hasn't reached that point where Congress has six months to consider and either defer or not defer. It's at an earlier stage. So I think there probably was six months of comment, but it hasn't been formally adopted yet. I think also this situation exemplifies an agency turning around and changing things once courts decide to interpret the law and say what it means. We've got two circuit court decisions within the last 18 months saying you can't just declare that this text which is silent as to attempts actually covers attempts. And it may be – You could clearly do it on – if we went in back. You clearly could go on bonk to reverse it, yes. But the question is whether we – can we rely on Stinson to make a change at this point since we've already interpreted Stinson or Kyser? You mean Kyser? No, no. No Stinson? Well, I think Kyser undermined some of Stinson's discussion. Stinson says at page 44 that even unambiguous guidelines are properly clarified by the Sentencing Commission Commentary. Well, that's something that Kyser clearly disavowed. In the first sentence of its opinion and time and again, it says that unless there is genuine ambiguity in the text of a provision, no deference is in order. What do we make of the Supreme Court precedent which the court has repeatedly said, hey, you leave it to us to overrule our precedent. Don't go in saying, hey, you said something in a later case that looks like it undermines that earlier case. If we want to overrule Stinson, we know how to overrule Stinson. If we've spoken clearly on a subject, you leave that subject in place unless and until we overrule it. Don't say we've overruled stuff sub silencio. How do we manage that kind of precedent from the Supreme Court? I think that precedent holds when there's one Supreme Court precedent that's directly controlling. How is it directly controlling? Stinson's not about this particular provision of the Commentary. No, it's about how to interpret the guidelines. And Kyser isn't. Well, Kyser clearly overruled Stinson to the extent we're looking at what it said about the guidelines. There's the question when you say it clearly overruled that. It doesn't clearly overrule. It doesn't cite Stinson. It doesn't say anything about the guidelines. It's a Veterans Administration case coming out of the Federal Circuit. It's got nothing to do with criminal law. So for you to say it clearly overruled Stinson, I mean, I'm afraid you're going to strand a in the face of Supreme Court precedent that says we'll overrule our own stuff. Why would we or could we, just on the basis of Kyser, feel comfortable doing what you're suggesting? Because the holding of Stinson is not as broad as your Honor seems to be suggesting. I'll grant you that Stinson says, apply this doctrine of our deference when you're interpreting the guidelines. It adopted our deference, or what was then called seminal rock deference, for purposes of interpreting commentary. No doubt, and I don't suggest the Court is free to depart from that. Well, Stinson said that the commentary in the guidelines manual that interprets or explains a guideline is authoritative unless it violates the Constitution or Federal statute or is inconsistent with or a plainly erroneous reading of that guideline. That's what Stinson says. Kyser says this Court has deferred to agencies' reasonable readings of genuinely ambiguous regulations. That's not what we have. We don't have an agency's regulation here. Do we? Well, I believe the rule of Stinson is that commentary is to be treated as the equivalent of... No, unless... It's analogized. Unless inconsistent. Unless inconsistent or plainly erroneous. Maybe Hightower misinterpreted Stinson. Yes, I think. Well, I don't know if it misinterpreted Stinson. It may have interpreted Stinson fairly. Because at that time, the Our Doctrine was much more in bold. But Kyser acknowledged that some of it, the Supreme Court's own opinions, have clouded the matter, had clouded the matter. And it pointed to that very language. Uphold the interpretation unless it's inconsistent or plainly contrary to. It said that that rule could suggest a caricature of what the Fundamental emphasis was that there must be genuine ambiguity in a provision before we're going to talk about deference at all. Hightower, what I would submit to the Court, is that Hightower, by the terms of its discussion, confirms that this Court did not regard this application note to bear any ambiguity, much less genuine ambiguity. And that's at page 184 of Hightower, where it says... So, assume that's right. It is what it is, right? Hightower says what it says. It binds this panel. Unless Kyser opens the door in the way you're suggesting, right? If we were to disagree with you about what Kyser gives us the running room to do, this point would be over for you because Hightower is controlling. Is that right? If you disagree on the application. The only way to fix that would be to be in bank, right? If Kyser did not overrule Hightower in this respect. Yeah. Okay. Unless my colleagues want to pursue that further, I'd like to ask you about the Rahafe issue, if I'm saying that name right. I'm not sure I am. How do you say it? I say Rahafe. Yeah, okay. So, we're on plain error review here? Yes. All right. The Eighth and Ninth Circuits have held that it's not plain error. Is that right? They have failed to raise this? Yes. Why are they wrong? Well, they engage in a very superficial analysis, as noted in the decision in which we alerted the court in our Rule 28J letter on Friday. They looked to the pre-sentence report that they said, based on this, we can say there's no effect on substantial rights. That's an incorrect approach to the plain error standard when a case went to trial. You don't look at all the evidence in the record, anywhere in the record, to determine whether there was an effect on substantial rights. You must look strictly to the trial record, what was before the jury. So, you can't turn to a pre-sentence report that was prepared after the fact and then say, okay, because of this, we know the jury would have found differently. You have to look at what evidence was in front of the jury. This court said that in its United States v. Xavier decision from 1993, and also in its United States v. Vito's decision from 1994. So, the evidence before the jury here is simply, I would argue, it did not even permit an inference that Mr. and Mrs. Vito had the requisite knowledge. It certainly didn't prove it beyond a reasonable doubt, and there certainly wasn't overwhelming evidence of it, because the parties didn't think it was an element at the time of the trial. So, the law changed, and it's very clear that if we just look at what trial took place here, instead of imagining a different trial altogether, the result would have had to be different. Is there a retroactivity issue here, though? No, because this case is on direct appeal. So, just as a general rule, it's either, it applies retroactively on direct appeal under Griffith v. Kentucky, or this simply isn't considered retroactive. But since we're not in habeas, we haven't reached the problem. Well, you cite the Sepulveda case as authoritative. It's kind of curious to me that the other courts have come down the other way, and there's not a whole lot of case law on here. But it would be, in effect, providing an element as having been proven when it was never even in the indictment, let alone in the jury instructions or whatever. Do you have, what's your best case? I think it's the concurring opinion in the United States v. Lewis, this court's en banc decision, joined by four judges of the court, which said that simply omitting an element from the indictment is probably structural error. Here, we have not just the element. You're arguing structural error as well. Both, I think it was structural error, and the evidence was insufficient. So, in Lewis, the jury had been instructed on the element at issue after the fact, due to a change in law. And the jury, pardon me, the jury had not been instructed on it, and therefore the court held it was structural error. This is similar. Neither the indictment alleged it, nor did the jury consider it, nor did the proof show it. It just wasn't part of this trial. So, it would be imagining a different trial altogether for a reviewing court to come in and offer a thought as to what a jury would find. Okay. We'll have you back on rebuttal, Ms. McDonough. Ms. Cloud. Thank you. Good afternoon, and may it please the court. Whitney Cloud for the United States. Thank you for the honor of allowing me to appear. Appellant Malik Nasir raises a number of arguments relating to his convictions and to his sentence, but his challenges to his convictions fail under the high bar of plain error review, and his challenges to his sentence fail under this court's binding and enduring precedent. Okay. Well, why don't we have you begin, if you would, with the point we spent most of our time on, whether or not Kaiser actually effectively overrules Stinson, or at least gives us the room to change our own opinion in Hightower, our own holding. Your Honor, to begin, no, this panel, respectfully, this panel of this court cannot overturn Hightower, because Hightower does directly control on this point, and Kaiser did not overrule Stinson. Your Honor referenced the Supreme Court's language. Rodriguez de Quijas v. Shearson slash American Express says in 1989 by the Supreme Court, if a precedent of this court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this court the prerogative of overruling its own decisions. As Your Honor's already observed, Kaiser barely mentions Stinson, and it certainly does not overrule it outright, because there are differences. It does talk about what the appropriate way to apply our deference is, and Hightower sort of rests on that kind of analysis, right, that we should give the commentary controlling weight, even though language doesn't show up in the guidelines themselves, because we should be deferring to what the Sentencing Commission says. And Kaiser says, you don't just defer, there are steps you've got to go through. What's wrong with Mr. Donohue's assertion that in light of Kaiser, the analysis in Hightower just doesn't hold up? The fundamental difference is that Stinson analogized to then-seminal Rock deference. It said, we're searching for the right analogy, and the closest we can get is the seminal Rock, an agency's own interpretation of its own legislative rule. But Stinson recognized that the Sentencing Commission was different, and that the deference due to the commentary of the sentencing guidelines is even different than the deference, the traditional seminal Rock hour deference due to an agency's interpretation of its own legislative rule. And we know that it's different because Stinson says, rather, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice. Well, there's at least two circuit courts that say, you can't get there from here, that looking at that language, you can't read, you can't properly read the commentary as supplementing or providing information because it's just at odds with what the guidelines say. And even Stinson says that you can't have commentary that's inconsistent with the text of the guidelines. Absolutely, Your Honor, and that is, that endures, and that is not at odds with Hightower. It is if you buy what the D.C. Circuit says, right? I mean, they're pretty clear about saying that is inconsistent, and you can't import inchoate from the commentary into the guidelines when it's pretty clear that it's not in there. To go to the point of whether the inchoate offenses are inconsistent with the guideline 4B1.2, I believe Judge Pryor's decision in the United States v. Lange is excellent on this point. It notes that the definition of controlled substance offense does not say controlled substance offense is those offenses of distributing, manufacturing, possession with intent to distribute. It says it are those offenses that prohibit. That expands the possible crimes that might fit under that definition, such that attempts to distribute are offenses that prohibit distribution. Should we be waiting for the Sentencing Commission to do what apparently is in process, which is put this into the guideline itself? I believe that this Court can follow the examples of the Seventh, Eighth, and Ninth Circuits who've all reached this decision again post-Kaiser and upheld their own precedence and uphold Hightower as still binding. As for what the Sentencing Commission is intending to do, it is obviously helpful, but it just speaks to the Sentencing Commission's desire for the D.C. Circuit and the Sixth Circuit to include these offenses as it always intended. It may take a long time for the Sentencing Commission to act. There doesn't seem to be any prospect of filling the quorum soon. I think Your Honor is correct, and that is why we would ask this Court to affirm its precedent in Hightower and hold the Hightower controls here, even post-Kaiser. Okay. Well, shifting gears to Goner Rehaef, help us out here. The Supreme Court has said that the knowledge of the felon, that he or she is a felon, is an element of the offense, right? Yes, Your Honor, that is what Rehaef said. How can it not be structural error to convict somebody when you don't give proof of one of the elements of the offense? Well, first, Your Honor, even in other cases in which the Supreme Court has clarified the law and there's an example of the government not putting in evidence of that offense, I believe this Court has not held that it's structural error. It's still trial error. Help me out. No, no, no. Just answer the question I'm asking, which is, if we know that what Rehaef says is the knowledge of the felon is an element of the offense, and we don't have a retroactivity problem because we're on direct appeal, then how can it not be structural error to convict somebody when there's no evidence of one of the elements of the offense? Oh, on the insufficiency of the evidence. No, structural error. Structural error, that you cannot send somebody away to jail if you have not proven all the elements of the offense. Your Honor, first, we would say that there was evidence before the jury such that the jury could convict on the knowledge of status element. They weren't instructed on it. It wasn't even in front of them. Nobody knew anything about it. I mean, we're in an artificial universe here where the Supreme Court has turned the world upside down. You know, you and me and other people might look at Justice Alito's dissenting opinion and say, brilliant, but it doesn't matter. It was a dissent. Rehaef says what it says, and it says that the knowledge of the felon is an element, and that wasn't ever put before the jury, and nobody can say it was because it just wasn't. We're in a counterfactual world if you try to say that. So the question is, how do you get around the argument that in light of our cases like Castro where we say the prosecution's failure to prove an essential element of the charge offense does constitute plain error and so can be understood as a miscarriage of justice, you know, when we've said things like that, how do you get around the fact, you know, you may feel it's unfair, the Supreme Court changed the rules of the game on you, but how do you get around the fact that you didn't prove an element of the offense? I think what makes this example of error unique is the old chief stipulation. This is the only compelled stipulation of its kind in which it's not just that the government did not put in evidence, it's that the government was precluded from putting in evidence sufficient. But that doesn't work. Old chief only goes so far. It says if there is a stipulation as to a conviction, then you can't put in evidence. But it doesn't address the situation that we have here where it's a total failure of proof, and you can't kind of bootstrap it under old chief. Presumably if they had known that this was an element, there would have been a stipulation to both aspects. So you can't pretend that the world would be that, oh, well, let's stipulate to one, and then of course they couldn't put this up. They didn't even know they had to. So that really doesn't work. But haven't we said that the failure to prove, you know, United States v. Castro, a fundamental miscarriage of justice exists when the prosecution fails to prove an essential element of the offense. United States v. Jones, affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt affects substantial rights and seriously impugns the fairness, integrity, and public reputation of judicial proceedings. Isn't that what we have here? I mean, it's amazing to me that the other courts have said, oh, you know, they could if it's really clear. So we'll just let that go. But we can't do that, can we? I think what the Eighth, Ninth, and now Eleventh Circuits are recognizing is that when they're citing the evidence in the PSR, it's not that they're looking at the entire record and finding any evidence they can. They're looking at what the evidence would have been. Would have been? You can't convict somebody on what the evidence would have been. The plain error review is very high. And it's intentionally high so that the proceedings, particularly ones that are not objected to below, are not undone on the basis of. Is it clear that the stipulation does not include the issue of knowledge? Your Honor, it does not include the issue of knowledge. The stipulation provides prior to December 21st, 2015, the date alleged in count three of the indictment, Defendant Malik Nasir was convicted of a felony crime punishable by imprisonment for a term exceeding one year in the United States District Court for the Eastern District of Virginia. So it does not go to knowledge directly. But could that be construed as his knowledge that he was a felon if he pled guilty? Well, Your Honor, thank you. That is an argument that we've put forth. What was before the jury was this stipulation. And Mr. Nasir was acknowledging as of April 2017 with his own signature that he had been convicted of a felony offense. How does that help that he was aware of it at the time of the stipulation? It has to be, I mean, what relevance does that have to whether at the time of the commission of the alleged offense he had that knowledge? There's nothing that that stipulation says about that. It is circumstantial, Your Honor, but circumstantial evidence has been upheld by this court and others too. How is the fact that he stipulates to it at trial circumstantial evidence that he knew about it at the time of the offense? If he is acknowledging it at the time of trial, he's acknowledging the truth of it. There is a reasonable inference that he knew of it. That's exactly my question. Give me the logical track. How does it follow? I mean, if you know it's snowing outside today, does that mean you knew yesterday it's going to snow tomorrow? It doesn't unless there's some other evidence that you've, I mean, where's the logic there? To rely only on the trial evidence of the stipulation of how the guns were found, of Mr. Nasir's other activities that were presented throughout the course of the trial. It is circumstantial, Your Honor. I guess that's where I'm struggling. I mean, you keep saying it's circumstantial evidence, but I'm not following, just as a pure matter of logic, how the fact that somebody knows fact A on one day means they knew it the day before or a year before. There's no inferential strength in that at all. It could be the very first time you're aware of it. There's no reason to believe. What reason is there to believe that knowing that fact at the time of stipulation means you knew it when you committed the offense? We say the cases on page 40 of our brief that timing is important when it comes to inferential knowledge. Granted, these cases, the timing was probably shorter. But, again, this dovetails back into the plain error question before this court. Does plain error matter if it's structural error? If it's structural error, you're done, right? I'm not aware of the Third Circuit precedent finding that even in cases of a missing element that it's structural error as opposed to trial error. Why don't you address the Lewis opinion that Mr. Donahue raised, okay? We've got Lewis where at least four members of the court are pointing out that if you don't indict, leave the conviction aside. Just in the indictment, if you don't include all the elements of the offense, that's structural error. So in light of that and in the light of the language I quoted to you from Castro where we say it's definitely clear error and it's a miscarriage of justice for the prosecution to fail to prove an essential element of a charged offense. How do you get to where you want to get, which is no harm, no foul, plain error, it's not a big deal? Well, first of all, indictment error, we said this in our papers, we definitely do not concede indictment error. So I think indictment error versus a trial error is a little different. But this is indictment, this is indictment, trial, and instruction. Right. You've got a triple whammy here. Yeah. I wasn't, I was trying to give you an a-for-sure-I case. If it's bad in the indictment, surely it's got to be structural and bad at trial, right? So just on your terms, stick with it. Castro says it's plain error and a miscarriage of justice to convict somebody when you haven't proven an essential element of the offense. How do you deal with that? The difference between this case and Castro is, again, what the stipulation was standing in place of. The stipulation was standing in place of details as to the name and nature of Mr. Nasir's prior conviction. He had been convicted of the same felony offense and subject to seven years incarceration. So are we back to you can infer from the fact that he stipulated to it that he knew it before? I think that is the strongest evidence within the trial. But I do think that the arguments that the Eighth, the Ninth, and the Eleventh Circuit are implicitly adopting is recognizing that the stipulation matters here because it was compelled. It's not a matter of the government not putting forth evidence. The government could not put forth evidence. And that is a different situation. You could have put forth evidence, and you've acknowledged you could have put forth evidence. You could have put forth in that stipulation, and he knew this on day X, the date of the offense. That wouldn't have offended anything. It wouldn't have been prevented. It could have happened. It didn't happen because nobody knew the Supreme Court was going to pull Rahafe out of the bag. Correct, Your Honor. And that probably goes to the fourth prong, whether this error affected the fairness and integrity of judicial proceeding. And for Mr. Nasir, it did not. Because it's okay to be convicted of something in which the government doesn't prove an essential element of the offense. No, Your Honor, it's not okay to be convicted of something where the government doesn't prove an essential element of the offense, but the knowledge element is sufficiently proven through the stipulation here. I see that my time has elapsed. Does the Court have any further questions? No. Thank you very much. Thank you very much, and we've passed at the fourth prong. Great. Thanks. Ms. Stoney, we'll have you back on rebuttal. Your Honor referred to Justice Alito's opinion in Rahafe, and I would just note that in that opinion, Justice Alito also noted that most defendants on direct appeal would be entitled to a new trial under the rule of Rahafe. So no less an authority than that has applied the rule in favor of Mr. Nasir. If I may step for a moment to Stinson and Hightower and Kaiser, I just want to try to speak very precisely about why I think it's correct that Kaiser has rendered Hightower no longer good law. First of all, Stinson, regardless of the discussion that my friend accurately stated, the holding of Stinson is that despite differences between the Sentencing Commission and other agencies, the Our Deference Doctrine shall apply. That's the rule Stinson stated. Now, Hightower applied that rule to a totally different provision, and it said that the comments at issue, in Hightower's words, quote-unquote, expands the definition in the text. And then after saying that, it said, and under the rule that we'll defer if something's not plainly inconsistent, that's not plainly inconsistent. But it is plainly inconsistent. We're with you. We're with you on that. We're clear on that in your briefing. You're clear on that in your opening argument here today. You need to address what your learned colleague here has raised with you, and which we tried to raise with you before, which is the Supreme Court has said, hey, look, even if there's inconsistencies, you let us overrule our stuff. Don't you overrule by implication. You go ahead and you let us clean up that kind of mess. Kaiser says nothing about the guidelines, says nothing about criminal law. You're asking us to take what Kaiser says about how to apply our deference, because our deference still applies after Kaiser, and say that it overrules the direct holding in Stinson. How does that work in light of what the Supreme Court has said about, hey, appeals courts, stay in your lane? I am not contending that Kaiser overruled Stinson by any means. I think Stinson has very little application here. It simply held apply our deference in this context. The opinion that this court has to engage with is Hightower, its own opinion. That's the only, Stinson is still good law, fine. How does Kaiser then overrule, how does it undercut Hightower? It undercuts Hightower because Hightower, in its own discussion, makes plain that the court did not regard this provision of the career offender guideline to be ambiguous at all, much less genuinely ambiguous. It said this application note expands the guideline. And it said that's okay under Stinson, but Stinson is really, it's shorthand, therefore, under the our deference rule that Stinson holds we apply to the guidelines. So the court still applies our deference. But what Judge Jordan said vis-a-vis Kaiser and Stinson applies to Kaiser and Hightower, that we shouldn't say it's the same thing, isn't it? It's two sides of the same coin. No, because the issue in Stinson, the provision that Stinson was interpreting, most certainly was genuinely ambiguous. It has since been held unconstitutionally vague. It was so ambiguous. The provision at issue in Hightower and at issue here is not genuinely ambiguous. And it's not just me saying that. It's the panel in Hightower conveying that by stating that this note expands the guideline. So your argument in a nutshell is Hightower felt bound by the then existing program for interpreting our. But after Kaiser, we're not bound by that. And we should, therefore, be ready to say Hightower is no longer controlling law in light of Kaiser and isn't good law. Have I followed you? Yes, I think so, Your Honor. Okay. All right. Thank you. Thank you, counsel, for your argument. We appreciate the help. We've got the matter under advisement.